UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

STEPHEN LUDWIG VANDER HOFF,

        Debtor.

_____/

GREENSTONE FARM CREDIT SERVICES,
ACA and GREENSTONE FARM CREDIT
SERVICES, FLCA,

        Plaintiffs,

v.

STEPHEN LUDWIG VANDER HOFF,

        Defendant.

_____/

Case No. 21-01002-swd
Hon. Scott W. Dales
Chapter 7

Adversary Pro. No. 21-80088

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                  Chief United States Bankruptcy Judge

I. INTRODUCTION

In a prior order, after reviewing the Defendant, Steven L. Vander Hoff's Motion to Dismiss Plaintiff's [sic] Complaint, and, for Judgment on the Pleadings (the "Motion," ECF No. 17), and the response of GreenStone Farm Credit Services, ACA and GreenStone Farm Credit Services, FLCA (the "Response," ECF No. 21), the court gave notice that it would evaluate the Motion and the Response under Rule 56, rather than Rule 12, because the record included matters outside the pleadings.  *See* Fed. R. Civ. P. 12(d) (applicable by virtue of Fed. R. Bankr. P. 7012).[1]  The court

---

[1] The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq.* and the Federal Rules of Civil Procedure are set forth in Fed. R. Civ. P. 1 *et seq.*  In the text of this opinion the court will refer to any rule simply as "Rule __," relying on the numbering conventions within each ruleset to distinguish the references.

gave the parties "notice and a reasonable opportunity to present all additional materials pertinent to the motion." *Id.*

Neither party accepted the court's invitation to supplement the record and the court has determined that oral argument is not necessary.  For the following reasons, the court will deny the Motion.

## II. SUMMARY JUDGMENT STANDARDS

As just observed, notwithstanding Mr. Vander Hoff's initial reliance on Rule 12(c), the court will address the Motion under Rule 56, as a request for summary judgment.  Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court long ago explained that a genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citations omitted).  This holds true even when a bench trial is in prospect. "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

Mr. Vander Hoff, as the moving party, bears the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of GreenStone's claim, even

though GreenStone would bear the ultimate burden of proof at trial.  Fed. R. Civ. P. 56(c); *see also*

*Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Assuming the

moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to

interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue

for trial."  *Id*., 746 F.3d at 726.  The adverse party "may not rest upon the mere allegations or

denials of his pleading but ... must set forth specific facts showing there is a genuine issue for

trial."  *Anderson*, 477 U.S. at 248.


III. ANALYSIS

This case involves statements that Mr. Vander Hoff made in connection with financing his

family's dairy farm, Vander Hoff Brothers' Dairy (the "Dairy").  The Plaintiffs' single-count

complaint relies on 11 U.S.C. § 523(a)(2)(B)[2] which provides in relevant part as follows:

> A discharge under section 727 … of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> …
>
> (B) use of a statement in writing—
>
>   (i) that is materially false;
>
>   (ii) respecting the debtor's or an insider's financial condition;
>
>   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
>   (iv) that the debtor caused to be made or published with intent to deceive …

---

[2] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*.  Specific sections of the Bankruptcy Code are identified herein as "§ ___."

11 U.S.C. § 523(a)(2)(B). In support of dismissing GreenStone's complaint, Mr. Vander Hoff challenges two statutory elements of GreenStone's *prima facie* case, specifically § 523(a)(2)(B)(i) (materiality of the false statement) and (a)(2)(B)(iii) (the creditor's reasonable reliance).[3]

First, he claims the omission of the Synergy Feeds debt from the financial statements was immaterial—GreenStone would have made the loan regardless. Second, he contends that the record cannot support a finding that GreenStone's reliance on Mr. Vander Hoff's (and the Dairy's) written financial statement was reasonable—he argues that GreenStone should have discovered the omitted debt to Synergy Feeds based on other historical documents available to the lender. The court rejects both arguments, finding genuine issues for trial on both elements of the case.

At the outset, the court notes what is not in dispute: Mr. Vander Hoff's failure to disclose the Synergy Feeds debt at the time GreenStone made the loan. Mr. Vander Hoff specifically concedes that GreenStone was not aware of the Synergy Feeds debt at the time the loan closed, and the financial statements bearing his signature show that he made or published the statement.[4] The question is whether disclosure would have made any difference to GreenStone, and whether GreenStone reasonably relied on the financial statement in making the loan, given all the underlying circumstances surrounding the transaction.

The declaration of Nicole Ladd (Exhibit G to GreenStone's Response), among other documents in the record, raises genuine factual issues regarding whether the false or incomplete statements that Mr. Vander Hoff made to GreenStone about the Dairy's financial condition were both material, and worthy of the lender's reasonable reliance. The statements of Plaintiffs'

---

[3] As the party seeking to limit the scope of Mr. Vander Hoff's discharge, GreenStone must shoulder the burden of proof on each element of the case. *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Failure to establish any element dooms the entire case.

[4] His intent to deceive, inherently a factual issue, is not before the court on the Motion.

employees, especially the declaration of Ms. Ladd, constitute the principal evidentiary material in the record on these questions—and they certainly do not support Mr. Vander Hoff.

A reasonable fact finder would be well within bounds to treat a borrower's failure to disclose a substantial mortgage (here, the mortgage to Synergy Feeds—coupled with the certification in the loan documents that the financial disclosures were "true, correct, and complete" (GreenStone Exh. B)—as a material nondisclosure. Indeed, Ms. Ladd indicated that, according to GreenStone's lending policies, it would have insisted upon additional credit enhancement (covering 90% of the Dairy's obligation) from the Farm Services Agency, had it known about the secured debt. Ladd Decl. at ¶ 24. (GreenStone Exh. G). The omission would have changed the terms of the credit, and therefore was "material" to the lender's decision. Another GreenStone employee involved in the relationship, Mr. Erick Krummen, indicated in prior testimony that GreenStone requires a first lien position when making a secured loan, similarly confirming the materiality. *See* Motion at Exh. C (testimony of Erick Krummen in Case No. 20-04150-mlo Tr., 101:3-140). Similarly, the fact that GreenStone ordered a title commitment, albeit one that did not uncover the then-new Synergy Feeds mortgage (Motion at Exh. A), permits an inference in the lender's favor that the omission of the mortgage was material.

As for Mr. Vander Hoff's argument against GreenStone's reasonable reliance, the challenge appears to rest on the fact that some of the Dairy's accountant's work papers referred to recurring expenses for feed purchased from Synergy Feeds, and an accurate title search would have revealed the mortgage that the Dairy had just granted to that vendor. In effect, Mr. Vander Hoff urges the court to say, "shame on GreenStone for not figuring it out." Even recognizing that "[r]easonable reliance" is a higher standard than that of "justifiable reliance," (the standard that

applies to general fraud claims under § 523(a)(2)(A)),[5] the court is not convinced that the record warrants a finding for Mr. Vander Hoff as a matter of law on this crucial point.  This is particularly so, acknowledging the Sixth Circuit's admonition that the requirement of reasonable reliance "is not a rigorous one."  *Bomis v Nat'l Union Fire Ins. Co.*, 25 F.3d 1047, 1994 WL 201885 (6th Cir. 1994) (Table).

Chief Judge Stout recently and helpfully summarized the law governing "reasonable reliance" under § 523(a)(2)(B)(iii) in our Circuit, noting that the question of a creditor's reliance is typically "a question of fact to be determined in light of the totality of the circumstances."  *In re Agrawal*, Case No. 20-30242, 2022 WL 1913543, at *5 (Bankr. W.D. Ky. June 3, 2022) (quoting *Buckeye Ret. Co., LLC v. Kakde (In re Kakde)*, 382 B.R. 411, 422 (Bankr. S.D. Ohio 2008) (citations omitted).  Questions of fact, as noted above, are particularly ill-suited to resolution under Rule 56 on a record such as the present one.

Nevertheless, Mr. Vander Hoff urges the court to decide the issue, against GreenStone, as a matter of law, arguing that "the most appropriate case law authority for interpreting the concept of reasonable reliance, *Bomis*, is most helpful."  *See* Defendant, Stephen L. Vander Hoff's Brief in Support of His Motion to Dismiss Plaintiff's [sic] Complaint and for Judgment on the Pleadings ("Def. Br.," ECF No. 17) at p. iii.  *Bomis* teaches, however, that "the reasonableness requirement operates to bar non-dischargeability only where the creditor's asserted reliance was so unreasonable as to negate the existence of actual reliance."[6] And, as noted above, the Sixth Circuit in that very case explained that the "reasonableness" requirement of § 523(a)(2)(B)(iii) serves a

---

[5] *In re Oster*, 474 Fed. Appx. 422, 425 (6th Cir. 2012).
[6] For this proposition the Sixth Circuit cites *In re Ledford*, 970 F.2d 1556, 1560 (6th Cir. 1992), *cert. denied,* 507 U.S. 916 (1993).

limited function[7] and that "the creditor need establish only its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact. *Bomis*, 1994 WL 201885 at *3. This standard, although cited by Mr. Vander Hoff in his brief as the most "helpful" authority, is actually more helpful to GreenStone in this summary judgment posture.

The Sixth Circuit in *Ledford* set forth several factors to assist courts in evaluating the reasonableness of a creditor's decision not to investigate, confirming that the court's decision is inherently factual:

> (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Ledford*, 970 F.2d at 1560. The *Ledford* factors should not operate as a checklist, but instead serve only as guidance, more or less helpful in any particular case depending, of course, on the circumstances. The last two factors—the existence of any red flags and the possibility that minimal investigation would have revealed the inaccuracy—seem most applicable here, but even so, they do not warrant any finding today as a matter of law. The record in this case, especially the testimony of Erick Krummen and the Ladd declaration, easily surmount this admittedly low bar under § 523(a)(2)(B) and Rule 56.

As for red flags, Mr. Vander Hoff apparently identifies two. First, he contends that GreenStone had access to the Dairy's accountant's work papers and explanatory cover letter which

---

[7] In our circuit, the requirement weeds out lawsuits under § 523(a)(2)(B) by creditors who invited a debtor to supply false information or who, in effect, did not rely at all on it.

should have prompted the lender to look deeper into the Dairy's finances.  It is true that the CPA's "Independent Accountant's Compilation Report" (Exh. I to the Motion) warned about the Dairy's departures from accounting principles (specifically with respect to depreciation of cattle and omission of cash flow information), and it is also true that a listing of expenses revealed substantial purchases from Synergy Feeds and a "trial balance" identifying a modest debt to that vendor. Nevertheless, at this stage of the proceeding, the court is not persuaded that this information amounts to the proverbial "red flag."  In the court's experience, many closely-held businesses, including those in the agriculture sector, employ less-than-formal bookkeeping and accounting practices even while dealing fairly with creditors.  Drawing inferences in favor of a non-moving party, the admitted departure from generally accepted accounting principles is not invariably a "red flag."  And, even assuming that the substantial feed expense associated with Synergy Feeds warranted more investigation, other aspects of those same workpapers undercut the significance of the expense.  First, the expense decreased substantially from 2013 to 2014 (by $63,333.36) according to the trial balance attached to Mr. Vander Hoff's Answer at Exh. 1, showing the Synergy Feeds debt (as of Dec. 31, 2014) at $15,415.75, substantially below the actual (though undisclosed) obligation—the *secured* obligation—of somewhere between $120,000.00 to $160,000.00 according to GreenStone.  Drawing inferences in favor of the non-moving party, the court cannot say that an accountant's standard disclaimers constitute a red flag, or that a revolving debt of only $15,415.75 on annual purchases from that vendor exceeding half a million dollars as of year-end (approximately 3%) should have raised a red flag, let alone an eyebrow. It is undoubtedly true that GreenStone, in retrospect, wishes it had scrutinized more carefully the Dairy's financial situation, but the workpapers cannot be said, as a matter of law, to negate actual reliance.

Mr. Vander Hoff also argues against reasonable reliance based on a flawed title search:

> Pre-issuance of the loans that are the subject of this litigation, the Title Company performed a title search on all encumbered real estate owned by the Dairy. That title search would have given Plaintiff actual, record notice of the Synergy Feeds debt question.

Def. Br. at p. 1; Motion at Exh. A.  The argument is puzzling because it concedes that GreenStone *did* arrange for a pre-funding title search.  Presumably Mr. Vander Hoff is seeking to charge GreenStone with the fact that the title company it used in connection with the loan approval process failed to detect the prior mortgage in favor of Synergy Feeds.  This hardly seems sufficient to support a finding as a matter of law that GreenStone cannot show reasonable reliance under the Sixth Circuit's view of that term.  Drawing inferences in GreenStone's favor on this Rule 56 motion, the record, therefore, suggests that GreenStone was in fact diligent, though its original title company may not have been.  Again, given the limited role that the reasonable reliance requirement is designed to play in § 523(a)(2)(B) according to the Sixth Circuit, the court is not prepared to hold that GreenStone's reliance on an established title company's title commitment is unreasonable as a matter of law, even if the title company failed to detect Synergy Feeds's substantially contemporaneous mortgage.

To summarize the court's view of the supposed red flags at this stage of the case, GreenStone's counsel put it best: "The absence of the disclosure at a time when GreenStone did not know about the debt does not raise a flag of any color." [GreenStone Br. at p. 9].  The court, therefore, is unwilling to say as a matter of law that GreenStone's reliance on the Dairy's financial statements (including Mr. Vander Hoff's verification) was not reasonable.

IV. <u>CONCLUSION</u>

The inherently factual nature of the reliance and materiality prongs of § 523(a)(2)(B) and the current record in this proceeding require the court to deny the Motion. Now that discovery has closed and the parties were unable to narrow the issues through the post-discovery motion practice, the next step is to set trial-related deadlines. To accomplish this, the court will direct the Clerk to schedule a final pretrial conference to be held promptly after entry of this Memorandum of Decision and Order. In the meantime, the parties would be well-served to begin discussing ways to narrow issues for trial, perhaps by stipulating to facts where possible and certainly to the admission of uncontroversial exhibits. In any event, the parties should be prepared to discuss streamlining the trial process at the final pretrial conference.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

IT IS FURTHER ORDERED that the Clerk shall schedule a final pretrial conference to occur promptly after entry of this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Alexander Joseph Berry-Santoro, Esq., and John W. Polderman, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated September 7, 2022**



Scott W. Dales
United States Bankruptcy Judge